**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
Case No.: 5:19-cv-00187-TBR**

MOTORISTS MUTUAL INSURANCE
COMPANY                                                                                                PLAINTIFF

v.

QUEST PHARMACEUTICALS, INC.                                                          DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Plaintiff Motorists Mutual Insurance Company's ("Motorists") Motion for Summary Judgment. [DN 35]. Defendant Quest Pharmaceuticals, Inc. ("Quest") has responded. [DN 37]. Motorists has replied. [DN 38]. As such, this matter is ripe for adjudication. For the reasons that follow, **IT IS HEREBY ORDERED** that Motorists' Motion for Summary Judgment [DN 35] is **GRANTED**.

**I. Background**

Motorists filed the current action against Quest, a pharmaceutical distributor, in this Court on December 2, 2019. [DN 1; DN 35-94 at 1]. Motorists issued Policy Number 33.258667-70E to Quest. [DN 1 at 3]. The policy was effective for one-year periods beginning on October 26, 2004 and ending on October 26, 2015. [*Id.*] The Commercial General Liability policy provides, in relevant part:

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this policy applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does

>   > not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>   >
>   > …
>   >
>   > e.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

[DN 1-2 at PageID 109]. The Commercial Umbrella Coverage policy provides, in relevant part:

>   A.  Insuring Agreement
>
>   We will pay on behalf of the insured the "ultimate net loss:"
>
>   a.  In excess of the "underlying limit," or
>   b.  For an "occurrence" covered by this policy which is either excluded or not covered by the "underlying insurance,"
>
>   Because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this Coverage Form applies, caused by an "occurrence" anywhere in the world.

[*Id.* at PageID 155].

Quest has been sued in seventy-seven lawsuits by a variety of plaintiffs—cities, counties, private health clinics, and health departments—seeking to recover economic costs allegedly incurred due to Quest's improper distribution of opioids ("Underlying Litigation"). Quest does not argue plaintiffs in the Underlying Litigation are suing in *parens patriae* capacity, or for bodily injury suffered themselves. However, Quest argues the plaintiffs' damages are because of bodily injury because the bodily injury allegedly suffered by individuals is the basis of the plaintiffs' claims. Motorists seeks declaratory judgment that the policies do not provide coverage to Quest in the Underlying Litigation.

## II. Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence…of a genuine dispute…" Fed. R. Civ. P. 56(c)(1). Mere speculation will not suffice to defeat a motion for summary judgment, "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1177 (6th Cir. 1996).

### III. Discussion

#### A. Contract Interpretation

"A federal court sitting in diversity must apply the substantive law…of the state in which it sits." *Phelps v. McClellan,* 30 F.3d 658, 661 (6th Cir. 1994). "To ascertain the construction of an insurance contract, one begins with the text of the policy itself. So that, 'the words employed

3

in insurance policies, if clear and unambiguous, should be given their plain and ordinary meaning.' *Nationwide Mut. Ins. Co. v. Nolan,* 10 S.W.3d 129, 131 (Ky. 1999). And, if no ambiguity exists, a reasonable interpretation of an insurance contract is to be consistent with the plain meaning of the language in the contract. *Brown,* 184 S.W.3d at 540." *Pryor v. Colony Ins.,* 414 S.W.3d 424, 430 (Ky. App. 2013). Under Kentucky law, the party seeking to establish coverage bears the burden of establishing that the incident at issue was within the scope of the policy. *North American Acc. Ins. Co. v. White*, 258 Ky. 513, 80 S.W.2d 577, 578 (1935).

"When faced with the necessity of construing such statutory and contractual language, we must look to prior pronouncements of any policy by which such insurance contracts will be interpreted by the courts of Kentucky. In so doing, we find that two cardinal principles apply: '(1) the contract should be liberally construed and all doubts resolved in favor of the insureds; and, (2) exceptions and exclusions should be strictly construed to make insurance effective.'" *Ky. Farm Bureau Mut. Ins. Co. v. McKinney,* 831 S.W. 2d 164, 66 (Ky. 1992) (quoting *Grimes v. National Wide Mutual Ins. Co.,* 705 S.W. 2d 926 (Ky. App. 1985). "Kentucky courts have also held that this rule of liberal construction does not mean every doubt must be resolved against the insurer; 'the policy must receive a reasonable interpretation consistent with the parties' object and intent or narrowly expressed in the plain meaning and/or language of the contract.'" *Secura Ins. Co. v. Gray Constr., Inc.,* 717 F. Supp. 2d 710, 715 (W.D. Ky. 2010) (quoting *St. Paul Fire & Marine Ins. Co. v. Powell-Walton-Milward, Inc.,* 870 S.W.2d 223, 226 (Ky. 1994)).

**B. Duty to Defend and Indemnify**

"The insurer has a duty to defend if there is any allegation which potentially, possibly or might come within the coverage of the policy." *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.,* 814 S.W.2d 273, 279 (Ky. 1991) (citing *O'Bannon v. Aetna Casualty and*

*Surety Company,* 678 S.W.2d 390 (Ky. 1984)). "The insurance company must defend any suit in which the language of the complaint would bring it within policy coverage regardless of the merit of the action." *Wolford v. Wolford,* 662 S.W.2d 835, 838 (Ky. 1984).

"The duty to defend is separate and distinct from the obligation to pay any claim." *James Graham Brown Foundation,* 814 S.W. 2d at 279. "The duty to indemnify is narrower than the duty to defend because it only arises when there is an actual basis for the insured's liability to a third party." *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co.,* 598 F.3d 257, 269 (6th Cir. 2010). "If there is no duty to defend, then there is no duty to indemnify because the duty to defend is broader." *Scottsdale Insurance Company v. Good Karma Holdings LLC,* --F. Supp. 3d--, 2020 WL 6704584, *7 (W.D. Ky. Nov. 13, 2020) (citing *Nautilus Ins. Co. v. Structure Builders & Riggers Mach. Moving Div., LLC,* 784 f. Supp. 2d 767, 771 (E.D. Ky. 2011)).

## C. "Because of Bodily Injury"

Motorists argues it has no duty to defend Quest in the Underlying Litigation because the plaintiffs are not seeking damages because of bodily injury. Quest argues that courts broadly construe "because of" language in insurance policies. Quest further argues that the plaintiffs in the Underlying Litigation would not have allegedly sustained economic losses without the bodily injury suffered by individuals and therefore the economic losses should be covered.

Quest relies on *Cincinnati Ins. Co. v. H.D. Smith, L.L.C.* to support its argument. In *H.D. Smith,* the insurance policy that was issued covered damages because of bodily injury. 829 F.3d 771, 774 (7th Cir. 2016). "Such a policy provides broader coverage than one that covers only damages 'for bodily injury.'" *Id.* (citing *Medmarc Cas. Ins. Co. v. Avent Am., Inc.,* 612 F.3d 607, 616 (7th Cir. 2010). However, the *Medmarc* court was applying Illinois law. *Id.* Therefore, the *Medmarc* court's interpretation of policy language is not binding on this Court. Quest next cites to

several Kentucky cases interpreting the policy language "arising out of". However, those cases have no bearing on the present case as the policy language at issue here is entirely different.

In *Kentucky Cent. Ins. Co. v. Schneider,* the court considered whether punitive damages were damages because of bodily injury. Schneider was rear-ended by an uninsured motorist. 15 S.W.3d 373, 374 (Ky. 2000). Compensatory damages were settled but Kentucky Central argued punitive damages were not recoverable under the policy. *Id.* The policy at issue stated:

> A. We will pay *damages* which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" *because of "bodily injury"*:
>
> 1. Sustained by an "insured"; and
>
> 2. *Caused by* an accident.

*Id.* The Kentucky Supreme Court used damages *because of* bodily injury interchangeably with damages *for* bodily injury. *Id.* at 376 ("Kentucky Central's UM coverage obligates it to pay only *damages for bodily injury* caused by an accident.")

The court defined damages for bodily injury as "compensatory damages and include the expense of cure, value of time lost, fair compensation for physical and mental suffering caused by the injury, and for any permanent reduction of the power to earn money." *Id.* at 374. The court held the policy did not provide coverage for punitive damages because punitive damages are not damages for bodily injury but to punish and prevent "similar conduct in the future." *Id.* at 375 (quoting KRS 411.183(1)(f)).

Quest argues the "because of" language "necessarily include[s] damages that arise 'because of bodily injury' but are not directly 'for bodily injury.'" [DN 37 at 8]. However, the policy does not cover damages *arising* because of bodily injury. The policy only covers damages "because of 'bodily injury' or 'property damage'". [DN 1-2 at PageID 109]. The Court agrees with Quest that

6

Kentucky courts read the term "arising out of" broadly. Nonetheless, Kentucky courts and courts applying Kentucky law read the "because of" language synonymously with "for". *See Assurance Co. of America v. Dusel Builders, Inc.,* 78 F. Supp.2d 607, 609 (W.D. Ky. 1999) (policy covers damages *because of* property damage and court interprets that as claims *for* property damage) (emphasis added). Therefore, this Court will also read the policy as providing coverage for damages for bodily injury.

### 1. *Cincinnati Ins. Co. v. Richie Enterprises LLC*

Motorists relies on *Richie* to support its position. Richie was a pharmaceutical drug distributor insured by Cincinnati Insurance. 2014 WL 3513211 *1 (W.D. Ky July 16, 2014). Richie, in addition to other distributors, was sued in 2012 by West Virginia for its role in the opioid epidemic. *Id.* Richie sought defense from Cincinnati, but Cincinnati refused to provide a defense. *Id.* Cincinnati the file a declaratory judgment action. *Id.*

The court initially denied Cincinnati's motion for declaratory judgment because it found West Virginia was seeking both damages for economic harm and bodily injury on behalf of its citizens. *Id.* The Attorney General later filed an amended complaint removing the allegations relating to the claim for bodily injury. *Id.* at 2. Cincinnati asked the court to alter its Opinion due to the removal of the allegations for bodily injury. *Id.*

The policy at issue provided coverage for damages because of bodily injury. *Id.* at 3. Richie made the same argument Quest makes here. Richie argued "that the Court should interpret the phrase 'because of bodily injury' more broadly than the phrase 'for bodily injury.' According to Richie, when the Court employs a broader interpretation, it must find that here, even in the absence of Count VII and the medical monitoring claim, West Virginia is seeking damages 'because of' the bodily injury of its citizens." *Id.*

The *Richie* court held:

> In this case, in the absence of the medical monitoring claim, West Virginia is solely seeking damages for the money it has been required to spend because of the prescription drug abuse epidemic in West Virginia. The State of West Virginia does not need to prove that persons were injured by prescription drugs to prove that Richie and the other drug distribution companies violated West Virginia's Uniform Controlled Substances Act or Consumer Credit and Protection Ace. Likewise, they need not offer such proof to show that Richie and the other drug distribution companies cause a public nuisance—or to show that they were negligent in their distribution of controlled substances, causing the State of West Virginia to incur excessive costs. The Attorney General's claim that persons suffered physical harm and death due to prescription drugs only explains and supports the claims of the actual harm complained of: the economic loss to the State of West Virginia. Accordingly, the Court finds that Cincinnati does not have a duty to provide a defense to Richie in connection with claims asserted in the amended complaint in light of the Attorney General's deletion of County VII and its medical monitoring claim.

*Id.* at 5. Due to the lack of Kentucky and Sixth Circuit law directly on this issue, the Court relied on Seventh Circuit cases *Medcarc Casualty Ins. Co. v. Avent America* and *Health Care Industry Liability Insurance Program v. Momence Meadows Nursing Center.*

In *Health Care Industry Liability Insurance Program v. Momence Meadows Nursing Center,* two former employees sued Momence for violations of the Federal False Claims Act, and the Illinois Whistle-blower Reward and Protection Act. 566 F.3d 689, 691 (7th Cir. 2009). "They sought damages for themselves and on behalf of the United States and the State of Illinois". *Id.* In the underlying action, the former employees "sought treble damages for exposing thousands of false charges Momence submitted to Medicare and Medicaid." *Id.*

> The underlying complaint provides detailed allegations of how Momence was not meeting the standard of care for Medicare and Medicaid. It alleges, for instance, that Momence failed to maintain the minimum staffing levels for nurse and nurse assistants, failed to ensure its residents received their medications as prescribed by their physicians, failed to ensure residents received adequate nutrition and assistance with meals, and failed to provide the residents with clean and dry beds, clothes, and regular baths. The underlying complaint devotes several pages to further elaborating these alleged standard-of-care failures. Included in those pages

8

> is a detailed description of the resulting injuries patients suffered from Momence's substandard care, such as scabies, sepsis, seizures, and death.

*Id.* Momence's insurance company, Health Care Industry, filed suit seeking declaratory judgment that there was no duty to defend. *Id.* The district court found there was no duty to defend and Momence appealed. *Id.* at 692.

The commercial general liability coverage and the professional liability coverage both provided coverage of damages because of bodily injury. *Id.* Momence argued "that the underlying complaint [sought] damages 'because of' the physical harm to the residents. As Momence puts it, 'but for the inadequate care and resulting bodily injury, there would have been no lost services and no false claims.'" *Id.* at 694. "Momence claim[ed] that the injury to the residents is the essential foundation of counts one and two of the underlying complaint…Momence asserts that any damages that may result from counts one and two are therefore 'because of' the 'bodily injury' suffered by Momence residents, thus triggering [Health Care Industry's] duty to defend." *Id.*

The court affirmed the district court's finding and stated, "[a]lthough the allegations in the underlying complaint detailing the injuries suffered by Momence residents put a human touch on the otherwise administrative act of false billing, they need not be proven by the plaintiffs to prevail." *Id.* at 695. "Instead, all the plaintiffs need to show is that Momence billed the government for services and a level of care that it knew it was not providing. *Id.* "Neither of the plaintiffs in the underlying suit seeks damages for personal injury caused by substandard medical care." *Id.* at 696.

In *Medmarc,* Avent America ("Avent") was a manufacturer of products containing Bisphenol-A ("BPA"). 612 F.3d 607, 609 (7th Cir. 2010). Class action suits were filed against Avent "for using BPA in their products without informing the consumers of the health risks

associated with the potential leaching of BPA." *Id.* The operative complaint in the class action suit stated:

> This action arises out of Defendants' misrepresentations and/or omissions and failures to warn of and/or otherwise disclose that their Baby Products are manufactured using a dangerous chemical recognized to be toxic in several respects for years and which poses serious risks to an individuals' health as the fact that it leaches into food and beverages in the course of normal, everyday use.

*Id.* at 610. The complaint goes on to list several health risks associated with BPA exposure. However, "at no point in those thirteen pages, or anywhere in any of the underlying complaints, do the plaintiffs allege that any of these negative health effects have manifested in their children." *Id.*

The insurance policies issued to Avent covered "damages because of 'bodily injury'". *Id.* at 612. Medmarc filed suit seeking a declaratory judgment that it owned Avent no duty under the insurance policy. *Id.* at 612. The district court ruled in favor of Medmarc and Avent appealed. *Id.*

Avent argued that the "underlying complaints sketch out claims for damages due to Avent's creation and sale of products that cause bodily injury." *Id.* at 614. Medmarc argued that no duty to defend was owed "because there [were] no allegations in the complaint that the products caused bodily injury." *Id.* The court agreed with Medcarc and stated: [t]he problem with Avent's argument is that, even if the underlying plaintiffs proved every factual allegation in the underlying complaints, the plaintiffs could not collect for bodily injury because the complaints do not allege any bodily injury occurred." *Id.* The court cited to *Momence Meadows* to support its reasoning. "While *Momence Meadows* is procedurally distinct from the case at hand, the reasoning is exactly on point." *Id.* at 617.

After analyzing these two cases, the *Richie* court stated,

> [T]he Court again reiterates that West Virginia is not seeking damages "because of" the citizens' bodily injury; rather, it is seeking damages because it has been

10

required to incur costs due to Richie and the other drug distribution companies' alleged distribution of drugs in excess of legitimate medical need. This distinction, while seemingly slight, is an important one.

*Richie,* 2014 WL 3513211, at *6.

## 2. *Cincinnati Ins. Co. v. H.D. Smith, L.L.C.*

H.D. Smith, a pharmaceutical distributor, was sued by West Virginia for its role in the opioid epidemic. 829 F.3d 771, 773 (7th Cir. 2016). West Virginia alleged H.D. Smith "cost the state hundreds of millions of dollars every year. Among other things, that money was spent caring for drug-addicted West Virginians who suffer drug-related injuries and cannot pay for their own care." *Id.* Cincinnati provided coverage to H.D. Smith for damages because of bodily injury. *Id.* Cincinnati refused to defend H.D. Smith in the action and brought suit against H.D. Smith seeking a declaratory judgment. The district court found there was no duty to defend because "West Virginia's suit did not seek damages 'because of bodily injury.'" *Id.* at 773. H.D. Smith appealed.

"The policy that Cincinnati issued to H.D. Smith covers suits seeking damages '*because of* bodily injury.' Such a policy provides broader coverage than one that covers only damages 'for bodily injury.' *Medcarc Cas. Ins. Co. v. Avent Am., Inc.,* 612 F.3d 607, 616 (7th Cir. 2010) (applying Illinois law)." *Id.* at 774. The court found Cincinnati did have a duty to defend H.D. Smith, in large part, based on the following example.

> Suppose a West Virginian suffers bodily injury due to his drug addiction and sues H.D. Smith for negligence. Cincinnati's counsel acknowledged that such a suit would be covered by its policy. Now suppose that the injured citizen's mother spent her own money to care for her son's injuries. Cincinnati's counsel acknowledged that her suit would be covered too—remember the policy covers "damages claimed by any person or organization for care…resulting…from the bodily injury."
>
> The mother's suit is covered even though she seeks *her own* damages (the money she spent to care for her son), not damages on behalf of her son (such as his pain and suffering or money he lost because he missed work). Legally, the result is no different merely because the plaintiff is a state instead of a mother.

11

*Id.* at 774. "West Virginia seeks reimbursement of such 'damages and losses sustained as the proximate result' of H.D. Smith's negligence." *Id.* at 775. Therefore, the court found Cincinnati had a duty to defend H.D. Smith.

### 3. Application to Quest

Here, this Court still finds the reasoning in *Richie* and *Momence* applicable. Although the Seventh Circuit and other courts have subsequently found these economic losses to be damages because of bodily injury, those courts interpret the "because of" language more broadly than "for bodily injury". *Medmarc* was distinguished from *H.D. Smith* because "*Medmarc* concerned coverage 'for bodily injury' and not 'because of bodily injury.'" *Acuity v. Masters Pharmaceutical, Inc.,* 2020 WL 3446652, *5 (Ohio Ct. App. June 24, 2020) (citing *H.D. Smith,* 829 F.3d at 774-775). *See also Rite Aid Corporation v. ACE American Insurance Company,* 2020 WL 5640817, *15 (De. Super. Ct. Sep. 22, 2020). As the Court previously stated, Kentucky courts use "because of" and "for" interchangeably. It is not disputed that none of the plaintiffs in the Underlying Litigation are seeking damages based on any bodily injury suffered themselves. Like the *Richie* court stated, the plaintiffs in the Underlying Litigation do not need to provide proof that its citizens or patients experienced any bodily injury. Those allegations merely "put a human touch" on the claims. *Momence,* 566 F.3d at 695. Plaintiffs in the Underlying Litigation are neither seeking damages because of or for bodily injury. Therefore, Motorists has no duty to defend Quest. Accordingly, there is no duty to indemnify.

## IV. Conclusion

For the above stated reasons, **IT IS HEREBY ORDERED** that Motorists' Motion for Summary Judgment [DN 35] is **GRANTED**.

**IT IS SO ORDERED**.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

May 5, 2021

cc: counsel